IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| EXIQUIO MARMOLEJO | ) | 1:10CR268-1 |
| ROBERTO CARLOS ZUNIGA BECERRA | ) | 1:10CR268-2 |
| MARGARITA MARMOLEJO | ) | 1:10CR268-3 |

**MEMORANDUM OPINION AND ORDER**

This case came before the Court on August 16, 2010, for proceedings required by Fed. R. Crim. P. 44(c). For the reasons that follow, the Court concludes that the defendants' joint representation by a single attorney does not give rise to an actual conflict of interest <u>at this time</u> and that, to the extent a significant potential for such a conflict exists, the Court has taken appropriate measures to protect the defendants' right to counsel <u>at this time</u>. Although the Court finds no basis to reject the defendants' choice of counsel <u>at this time</u>, the Court also concludes that an inadequate basis exists to treat the defendants as having waived any and all conflicts of interest for all stages of this case. Accordingly, the Court will direct the parties to seek further review of these matters prior to the entry of any guilty plea or the commencement of any trial.

BACKGROUND

A federal grand jury for this district indicted the defendants for a variety of drug distribution-related offenses in violation of

21 U.S.C. §§ 841(a)(1) and 856(a)(1). (Docket Entry 1.)[1] At their initial appearances, A. Wayne Harrison made a general appearance on behalf of each of the defendants. (See Docket Entry dated Aug. 10, 2010.) At that time, the Court "advised the defendants that an attorney's joint representation of two or more defendants [in a single case] requires the Court to conduct an inquiry into the appropriateness of such representation." (Id.)[2] In addition, the Court "[o]rdered that the United States and the defendants' counsel each file a written submission . . . discuss[ing], in light of Fed. R. Crim. P. 44(c), the procedures for reviewing the appropriateness of joint representation and what particular inquiry the Court should make with each defendant on the record." (Id.)

The Court set further proceedings for August 16, 2010. (Docket Entry 5.) In advance of those events, the Court appointed separate attorneys for each defendant to stand-by in the courtroom during the Rule 44(c) proceeding to provide independent counsel about whether each defendant wished to continue with joint representation. (See Docket Entry dated Aug. 16, 2010.)

The parties made their respective filings. (Docket Entries 9, 10.) In his memorandum, defense counsel stated that, based on the information then available, he anticipated that Defendant Exiquio

---

[1] No single count charges all three defendants; Defendant Exiquio Marmolejo is charged in all ten counts and each of the two remaining defendants are charged with him in two and three of those ten counts, respectively.

[2] The Court also complied with the requirement for all initial appearances in felony cases "to inform [each] defendant of . . . the defendant's right to retain counsel or to request that counsel be appointed if the defendant cannot obtain counsel," Fed. R. Crim. P. 5(d)(1)(B).

Marmolejo "is likely to enter a plea of guilty under conditions still to be determined, and that the other two defendants, who purport to have no knowledge of each others [sic] involvement in criminal activities, intend to plead not guilty and seek to be tried separately."  (Docket Entry 10 at 1.)

On August 16, 2010, the Court addressed each of the defendants individually about their right to effective representation of counsel (including separate representation), the inherent risk of conflicts of interest presented by joint representation, and common scenarios in which such conflicts might arise.[3]  In addition, the Court gave each defendant an opportunity to consult privately with independent counsel (which each of the defendants declined, notwithstanding the Court's contrary advice).

The Court thereafter engaged Mr. Harrison in a colloquy about his understanding of his professional obligation to avoid any representation that involved a conflict of interest and his efforts to comply with that duty.  During that exchange, Mr. Harrison confirmed that he had advised each of the defendants separately about substantially the same matters as had the Court, that he had reviewed the facts of the case as presented to him by the defendants and as reflected in the discovery file of the United States, and that he had carefully evaluated all plausible scenarios with an eye toward potential conflicts of interest.  Mr. Harrison

---

[3] The Court gave examples of how conflicts of interest due to joint representation may occur in connection with plea negotiations, jury selection, witness selection and examination, jury arguments, and sentencing arguments.

further reported that, based on his foregoing efforts, he had determined that no actual conflict of interest existed, that the case did not pose a likely prospect of conflict of interest, and that each of the defendants knowingly and intelligently consented to his joint representation of all of them.[4]

After soliciting any further input from the United States and Mr. Harrison about how the Court should proceed, the Court thereafter again directly addressed each of the defendants. During those exchanges, the Court gave the defendants an opportunity to ask questions. In addition, the Court elicited from each defendant narrative statements about his/her understanding of the right to separate representation, of the fact that each defendant currently had joint representation, and of the risks of conflict of interest posed by such joint representation. The defendants each reported to the Court that he/she wished to proceed with joint representation from Mr. Harrison. The Court thereafter allowed the defendants to maintain their choice of counsel for present purposes, but found an insufficient basis for treating the defendants' decision in that regard as a waiver of any and all conflicts of interest that might arise in the future.

## DISCUSSION

When confronted by "[j]oint representation," defined, inter alia, as a situation in which "two or more defendants [who] have

---

[4] Mr. Harrison also advised the Court that, based on his subsequent review of the evidence, he now anticipated that another of the defendants would seek to enter a guilty plea.

been charged jointly [in a single indictment] . . . are represented by the same counsel," Fed. R. Crim. P. 44(c)(1), the Court has three separate obligations:

1) it "must promptly inquire about the propriety of joint representation," Fed. R. Crim. P. 44(c)(2);

2) it "must personally advise each defendant of the right to the effective assistance of counsel, including separate representation," id.; and

3) "[u]nless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel," id.

In this regard, "Rule 44(c) establishes a procedure for avoiding the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to effective assistance of counsel." Fed. R. Civ. P. 44 advisory comm. notes, 1979 Amend. See also Wheat v. United States, 486 U.S. 153, 159-60 (1988) (observing that, "[w]hile permitting a single attorney to represent codefendants is not *per se* violative of constitutional guarantees of effective assistance of counsel, a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel" and citing Rule 44(c) as directive designed to protect "[n]ot only the interest of a criminal defendant but [also] the institutional interest in the rendition of just verdicts in criminal cases [that]

may be jeopardized by unregulated multiple representation" (internal citations, ellipses, and quotation marks omitted) (emphasis in original)).

As set forth above in the Background section, the Court has "promptly inquire[d] about the propriety of joint representation" and has "personally advise[d] each defendant of the right to the effective assistance of counsel, including separate representation," Fed. R. Crim. P. 44(c)(2). That leaves the Court to "take appropriate measures to protect each defendant's right to counsel," id., "[u]nless there is good cause to believe that no conflict of interest is likely to arise," id. Based on its inquiry on August 16, 2010, the Court does not find that any actual conflict of interest exists at this time. However, the Court concludes that, despite defense counsel's efforts to evaluate prospectively what scenarios may arise based on a diligent investigation of the facts of the case, it would be premature to conclude that "there is good cause to believe that no conflict of interest is likely to arise," id.

The Court reaches the latter conclusion because, as the United States Supreme Court has recognized, "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." Wheat, 486 U.S. at 162-63. Moreover, "[i]t is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand." Id. at 163.

-6-

See also Fed. R. Crim. P. 44 advisory comm. notes, 1979 Amend. ("[E]ven the most diligent attorney may be unaware of facts giving rise to a potential conflict. Often counsel must operate somewhat in the dark and feel their way uncertainly to an understanding of what their clients may be called upon to meet upon a trial and consequently are frequently unable to foresee developments which may require changes in strategy." (internal quotation marks omitted)). Even if certain of the defendants plead guilty as Mr. Harrison forecasts, the prospect of conflicts of interest remains. See Fed. R. Crim. P. 44 advisory comm. notes, 1979 Amend. ("[S]erious conflicts may also arise when one or more of the jointly represented defendants pleads guilty.").

Given this conclusion, the Court "must take appropriate measures to protect each defendant's right to counsel," Fed. R. Crim. P. 44(c)(2). The right to counsel in criminal cases flows from "the Sixth Amendment [which includes a] presumption in favor of counsel of [a defendant's] choice," Wheat, 486 U.S. at 160. However, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. at 159. "A necessary corollary to the right to effective assistance of counsel is the right to representation free from conflicts of interest." United States v. Swartz, 975 F.2d 1042, 1048 (4th Cir. 1992).

Because of the tension that may arise between the right to counsel of a defendant's choosing and to conflict-free counsel, "trial courts confronted with multiple representation face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule." <u>Wheat</u>, 486 U.S. at 161. In other words: "If a district court agrees to the multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance. On the other hand, a district court's refusal to accede to the multiple representation may result in a challenge [for interference with the defendant's choice of counsel]." <u>Id.</u>

Few guideposts exist to aid the Court in dealing with this dilemma. <u>See</u> Fed. R. Crim. P. 44 advisory comm. notes, 1979 Amend. ("Rule 44(c) does not specify what particular measures must be taken. It is appropriate to leave this within the court's discretion, for the measures which will best protect each defendant's right to counsel may well vary from case to case."). "One possible course of action is for the court to obtain a knowing, intelligent and voluntary waiver of the right to separate representation, for, . . . 'a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests.'" <u>Id.</u> (quoting <u>Holloway v. Arkansas</u>, 435 U.S. 475, 483 n.5 (1978)). However, even a valid waiver by a defendant does not end the matter because the Supreme Court has granted district courts "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated

-8-

before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163.[5]

Despite this recognition of judicial authority to deny waivers in cases with potential conflicts of interest, substantial uncertainty as to the proper course of action in any given case remains, because Wheat did not establish the outer parameters of a district court's discretion. Instead, the Supreme Court simply ruled that where, as in that case, a defendant close to trial for a "complex drug distribution scheme" seeks to substitute as his counsel an attorney who already represented two of the defendant's alleged co-conspirators, including one whom "[t]he Government intended to call . . . as a witness for the prosecution at [the defendant's] trial," the "refusal to permit the substitution of counsel . . . was within [the district court's] discretion and did not violate [the defendant's] Sixth Amendment rights." Id. at 163-64. Moreover, in affirming the district court's ruling denying the defendant's chosen counsel in Wheat, the Supreme Court reiterated the continued validity of the "presumption in favor of [a defendant's] counsel of choice . . . ." Id. at 164.

In this case, the parties have not forecast circumstances as strongly indicative of a future conflict of interest as existed in Wheat. Most notably, the Court has no indication that the United

---

[5] "[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented." Wheat, 486 U.S. at 162.

States would seek to call any of the defendants as witnesses at any trial of another.  Nor does the Court have any information about the nature of any plea arrangements that the United States or defense counsel may propose.  Indeed, the course this case will take largely remains unknown, as evidenced by the fact that defense counsel altered his projection about the prospects for a guilty plea as to one of the defendants in the brief interim between the initial appearance and the Rule 44(c) proceeding.

Under these circumstances, the Court finds insufficient grounds to override the defendants' explicit choice of counsel <u>at this time</u>.  The Court's efforts to advise the defendants about the right to separate counsel and the dangers of joint representation (including specific types of conflicts of interest that may arise during plea negotiations or at trial), to afford each defendant an opportunity to consult with independent counsel and to ask questions of the Court regarding these matters, and to elicit narrative responses from the defendants about their understanding of their rights and their desire to proceed with joint representation are sufficient <u>at this stage</u> to satisfy the Court's burden of taking "appropriate measures to protect each defendant's right to counsel," Fed. R. Crim. P. 44(c)(2).  Further, the Court concludes that each defendant validly waived the right to conflict-free representation for purposes of preliminary proceedings.

The Court, however, observes that, prior to the acceptance of a guilty plea from any of the defendants or the commencement of any trial as to any of the defendants, further inquiry should be made

as to these matters.  In this regard, the Court notes that the United States Court of Appeals for the Fourth Circuit "ha[s] recognized that a single waiver pursuant to [R]ule 44(c) may not serve to waive all conflicts of interest that arise throughout the course of that defendant's criminal proceedings.  The district court has a continuing obligation under [R]ule 44(c) to guard against conflicts of interest that may worsen as circumstances change during the course of the representation."  Swartz, 975 F.2d at 1049 (internal citations omitted).

Only after the parties' positions take more concrete form (such as when either side tenders, accepts, or rejects specific plea offers and/or makes decisions on witness lists and other matters of trial strategy) will the Court have a realistic prospect of properly assessing the propriety of joint representation at the guilt-determination stage.  As the Supreme Court has observed, "[a] few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants."  Wheat, 486 U.S. at 163.  As decisions about the entry of guilty pleas and/or preparations for trial occur, important considerations that bear upon the existence and/or nature of any conflicts of interest attributable to joint representation should crystalize.  Further inquiry into these matters and the need for additional waivers should take place at that time.[6]

---

[6] The undersigned United States Magistrate Judge's impressions of the defendants, formed based on their in-court statements on August 16, 2010, also support the view that supplemental proceedings under Rule 44(c) should occur in
(continued...)

CONCLUSION

The Court has "promptly inquire[d] about the propriety of joint representation and . . . personally advise[d] each defendant of the right to the effective assistance of counsel, including separate representation," Fed. R. Crim. P. 44(c)(2). Because the Court is unable to find "good cause to believe that no conflict of interest is likely to arise," <u>id.</u>, the Court also has "take[n] appropriate measures to protect each defendant's right to counsel," <u>id.</u>, including examining defense counsel about his efforts to meet his professional obligation to avoid any conflict of interest, highlighting for the defendants the dangers of joint representation (including specific types of conflicts of interest that may arise during the case), affording each defendant an opportunity to consult with independent counsel and to ask questions of the Court regarding these matters, and eliciting narrative responses from the defendants about their understanding of their rights and their desire to proceed with joint representation.

The Court finds that, based on the available information, no actual conflict of interest exists at this time. Moreover, to the extent the instant joint representation poses the potential for

---

[6](...continued)
advance of any guilty plea proceeding or trial. Specifically, the defendants manifested a limited ability to articulate their understanding of the risks posed by joint representation even after the Court gave them detailed information about the subject (and despite the fact that defense counsel reported having given each defendant similar descriptions on a prior occasion). Moreover, none of the defendants have substantial educational backgrounds or any significant history of dealings with the legal system. As a result, the undersigned Magistrate Judge expressed the view in open court that the defendants' allocution left some doubt about the depth of their understanding of the dangers of joint representation.

such conflict, disqualification of counsel is unwarranted at present and the defendants validly have waived their right to conflict-free representation during the preliminary phase of the case. Finally, the Court concludes that, prior to the entry of a guilty plea by or the commencement of any trial as to any of the defendants, further inquiry should be made as to the continued propriety of joint representation and/or the need for further waiver(s) of the right to counsel unhindered by any conflict of interest. Accordingly,

**IT IS THEREFORE ORDERED** that A. Wayne Harrison may remain as counsel for the defendants at this time.

**IT IS FURTHER ORDERED** that the defendants validly have waived any right to conflict-free representation during the preliminary stage of this case.

**IT IS FURTHER ORDERED** that the parties jointly shall request supplemental inquiry by the Court pursuant to Fed. R. Crim. P. 44(c), prior to the entry of any guilty plea or the commencement of any trial proceedings.

                                          /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                                  **United States Magistrate Judge**

August 18, 2010